**In re Contempt Proceedings against**
**ROTHSCHILD FRANCIS,**
**Editor of the "Emancipator," a Newspaper**

# March Term, 1925
# No. 6
# District Court of the Virgin Islands

St. Thomas and St. John Sub-Judicial District

# April 28, 1925*

*Same case on appeal, see p. 567, this volume*

*As taken from Transcript of Record in the United States Court of Appeals, Third Circuit, where it is designated "Judgment."

C. G. THIELE, *for respondent*

WILLIAMS, *Judge*

In the matter of the rule herein taken upon the said Rothschild Francis, Editor of the "Emancipator," a tri-weekly newspaper published in St. Thomas, Virgin Islands of the United States of America, and circulated in these islands, the United States, and elsewhere, to show cause why he should not be punished for contempt in the publishing of a certain article in said "Emancipator," on April 11, 1925, as follows:

### "TRIAL PER TESTES AND ITS AFTERMATHS

"You may not believe the story we are about to relate under ordinary circumstances. However, you are aware that we are responsible for whatever we publish.

"A judge denied a man his day in court, in other words he tried him without a jury and sentenced him to jail.

"According to the charge in the information and in conformity with Anglo-Saxon justice: Triatio ibi semper debet fiere ubi juratores meliorem possunt habere notitiam (a trial ought always to be had, where the jurors can have the better knowledge), not to mention that the law of the land where the trial was held, entitled the accused to a jury trial.

"Defendant appealed his sentence to a superior tribunal amidst much difficulties and humiliation.

"Prominent journalists denounced the sentence as erroneous and 'full of spite'.

"Following in their wake, came powerful organizations pledging their support to contest to a finish what they consider 'an outrage' — 'a flagrant misrepresentation of justice' and a 'malicious display of power'.

"They came to these conclusions after they had procured the advice of experts in the law, and had judiciously investigated the facts.

"In the face of these things the judge who sentenced the accused wrote a long letter, containing political inferences, to one of the organizations referred to above taking exceptions to their interest in the accused appeal to a higher tribunal.

"The executive committee of this organization of influence, after a careful and impartial study of the judge's letter told its director to reply. And he did so in a scorching manner. He denounced the impudence of the judge — called his attention to his many weak points — and dubbed him as one of the officials who opposed the acknowledged policies of the nation's legislature and its heads of executive departments as outlined for practice wherever they possess territorial jurisdiction.

"Of course, this matter would not have been news were the letters written by an ordinary person and void of its attempt to coerce liberty-loving people from seeking justice for a hated man.

"Is this judge afraid that his decision will be reversed and remanded thru a trial de novo?

"Judges are not supermen.

"Recently, Chief Justice Taft, in the case of U. S. vs. Philip [Phillip] Grossman [Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L. Ed. 527], said that:

" 'The administration of justice by the Courts is not necessarily always wise'.

"And he furthermore said that: 'Because judges are human the personal element is liable to sway their judgment'.

"Now get the idea. The same judge that railroaded the accused to jail sought to block his chance to further an appeal. Not upon recognized process of law — not from a sense of justice — but from solely racial and political prejudices.

"When the facts in this story are made public, and they have been so ordered, those responsible for the appointment of this 'Sir Oracle' in question will have to explain much.

"The old saying: 'Truth should be possessed by a juror, justice and judgment by a judge' comes fresh to memory, hence, we concur with our legal friends that trials per testes in certain instances carry with them dangerous, if not humiliating aftermaths."

That said article arose out of, and was written in connection with, the case of The People v. Rothschild Francis, No. 9, November Term, 1924, tried on January 12, 1925 (see page 66, this volume), wherein one Philip Mathias, a native policeman, was the prosecuting witness; that said case was a libel case, and was tried by

93

the Court without a jury, and in all respects in accordance with the law in such cases made and provided; whereupon said Rothschild Francis was found guilty and sentenced to thirty days' imprisonment, from which judgment he had appealed, and which appeal is now pending.

That in obedience to said rule, the said Rothschild Francis appeared in court with his counsel on this 28th day of April, 1925, and pleaded "Not Guilty." Whereupon, the Court, having heard the evidence and arguments, and being satisfied therefrom that said publication was the voluntary act of the said Rothschild Francis, Editor of the "Emancipator" aforesaid, for which he is, therefore responsible, he was adjudged to be in contempt of this Court, the District Court of the Virgin Islands of the United States of America, sitting in the Sub-Judicial District of St. Thomas and St. John aforesaid, and particularly because of the publication of the following excerpts from said article:

(1). "You may not believe the story we are about to relate under ordinary circumstances, however, you are aware that we are responsible for whatever we publish.

"A judge denied a man his day in court, in other words he tried him without a jury and sentenced him to jail.

"According to the charge in the information and in conformity with Anglo-Saxon justice: Triatio ibi semper debet fiere ubi juratores meliorem possunt habere notitiam (a trial ought always to be had, where the jurors can have the better knowledge), not to mention that the law of the land where the trial was held, entitled the accused to a jury trial."

(2). "Prominent journalists denounced the sentence as erroneous, and 'full of spite'. Following in their wake came powerful organizations pledging their support to contest to a finish what they consider 'an outrage' — 'a flagrant misrepresentation of justice' and a 'malicious display of power'."

(3). "The same judge that railroaded the accused to jail sought to block his chance to further an appeal."

94

That the said Rothschild Francis is in contempt, in particular, for publishing the above three excerpts from said article, in that he was unable to justify their publication or make any legal excuse therefor.

That said first excerpt is libellous because the said defendant in the case of The People v. Rothschild Francis (supra), was not entitled to a jury trial as a matter of right, as witness section 1, chapter 12, Title 5(V) of the Code of Laws (1921) of the Municipality of St. Thomas and St. John (5 V.I.C. § 3601 note), Virgin Islands of the United States of America, which reads, as follows:

"In all criminal actions in the District Court where the charge in the information amounts to a felony, the defendant may demand a trial by jury. If no jury is demanded, the case shall be tried by the Court without a jury: provided, however, that the Judge of the District Court may, on his own motion, order a jury for the trial of any criminal action;".

That the said libel was a misdemeanor is seen from an examination of section 5, chapter 1, Title 4(IV), of the said Code (1921; 14 V.I.C. § 2), which is, as follows:

"A felony is a crime which is punishable by imprisonment in the penitentiary for more than one year; every other crime is a misdemeanor;".

That libel is punishable in accordance with section 37, chapter 5, Title 4(IV), of the said Code (1921; 14 V.I.C. § 1172):

"By fine not exceeding $500, or imprisonment not exceeding one year, or both such fine and imprisonment;".

That as the imprisonment fixed for the libel in question was not more than one year, and as cases punishable by not more than one year's imprisonment are misdemeanor cases, the said libel was a misdemeanor case, and therefore the defendant was not entitled as a legal right, or under "the law of the land," to a jury trial.

That the said second excerpt is a contempt of court,

95

because it is a gross misrepresentation of a proceeding of the District Court aforesaid, as the said libel case was tried according to due process of law, and in an orderly, and, in all respects, lawful manner.

That the third excerpt was contemptuous because the said defendant was not railroaded to jail, but was given the full benefit of the law in such cases made and provided, and because his appeal was in nowise blocked, or attempted to be blocked, by the Judge of the District Court aforesaid.

That the said excerpts are, and each one of them is, contempt of court, in that they are libellous and scurrilous criticisms of the Court, its judgment and proceedings, in said case, which were published in a newspaper in St. Thomas, the said "Emancipator," and circulated in this jurisdiction, the United states, and elsewhere, and did bring, or tend to bring, this court into undeserved disrepute.

&ast; &ast; &ast; (judgment accordingly).